MONSERRATE QUIJANO-TELLADO, Appellant, v. REGISTRAR OF SAN GERMÁN, Respondent.

No. 710. Submitted March 2, 1928.—Decided March 23, 1928.

*J. A. Suris Agrait* for the appellant. The registrar did not appear.

MR. JUSTICE HUTCHISON delivered the opinion of the court.

A registrar of property refused to record a deed of conveyance upon the ground that the instrument purports to be a contract of purchase and sale between husband and

wife, and that a subsequent notarial instrument presented, together with a deed, is inadequate to correct the mistake.

The parties named in the opening paragraph of the deed of conveyance are Andrés Emilio Alvarez y Mercado and Monserrate Quijano y Tellado. Alvarez is described as a married man and the name of his wife, Emilia Lugo, is given. Monserrate Quijano y Tellado, the party of the second part, is identified as a divorced woman. The notary certifies to his personal acquaintance with the parties.

Thereupon the vendor, Alvarez, says that he is the owner of certain property described in the deed and identified as a parcel of land allotted to the said Alvarez in a division of community property following the dissolution of a former conjugal partnership between the said Alvarez and his "ex-spouse," the party of the second part, Monserrate Quijano y Tellado. In this connection reference is also made to another instrument of even date executed before the same notary. The deed of conveyance is subscribed by Alvarez, by Monserrate Quijano y Tellado, by the witnesses and by the notary. The second wife, Emilia Lugo, did not appear before the notary in any capacity and there is nothing whatever in the deed to indicate that she was among those present at the time of its execution.

Nevertheless, the granting clause begins with the statement "that Don Andrés Emilio Alvarez y Mercado sells and Dña. Emilia Lugo buys the above described property."

The deed of conveyance was then presented in the registry of property, together with what purports to be another formal instrument entitled an "Explanatory Act." In this most extraordinary document the notary before whom the original deed was executed appears in his individual capacity before himself as a notary, and in the form of a sworn statement narrates the facts and circumstances in regard to the execution of the said original deed, including the inadvertent substitution of name and surname in the

granting clause. Thereupon an attempt is made to correct the mistake by amending the clause in question so as to cause the same to speak the truth.

We quite agree with the registrar that a notary has no power to alter, to amend, or to reform a notarial instrument in the absence and without the consent of the parties thereto. For any such purpose, and entirely aside from any question of form, the subsequent document was utterly worthless. A majority of this court are clearly of the opinion that the later writing is equally valueless for any purpose whatsoever. A minority, including the writer, is inclined to the view that the paper last mentioned, notwithstanding all defects of form and the manifest futility of the effort to cure the defect in question, has some probative value, however slight, as cumulative evidence. Our decision does not depend, however, upon whether or not the rehearsal of facts by the notary, obviously intended to be a solemn statement in writing, over his signature authenticated by his rubric and seal of office, may be regarded as indicative of his understanding of the transaction, and to that extent corroborative of the intrinsic evidence contained in the original deed of conveyance.

The facts and circumstances disclosed by the original instrument, and above outlined, suffice without more to show that a conveyance by Andrés Emilio Alvarez to his former wife, Monserrate Quijano y Tellado, the party of the second part, and not to the second wife, Emilia Lugo, is what was intended by the only parties to the deed in question, and that the substitution of name and surname in the granting clause was a clerical error. The mere fact that such an error on the part of the scrivener can not be corrected without the formal consent of the contracting parties does not convert a mistake which is plainly susceptible of correction into an incurable defect.

The ruling appealed from must be reversed.